IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

NOV 16  A 9 7

JOSEPH KENNEDY,                    )
      Petitioner,                  )
                         )
                         )    Civil No. 2:06cv1028-LES
v.                                 )    (Arising out of)
                         )    CR No. 2:01-cr-00172-A
UNITED STATES OF AMERICA,          )
      Respondent,                  )
_____  )

MEMORANDUM IN SUPPORT OF JOSEPH KENNEDY'S
TITLE 28 U.S.C. § 2255(4) MOTION

---

      COMES NOW, JOSEPH KENNEDY, the Petitioner herein, by and through pro se, and respectfully moves the Honorable Court to correct, vacate, or set aside the Petitioner's sentence pursuant to Title 28 U.S.C. § 2255(4).  In support thereof, the Petitioner provides the following:

I.    STATEMENT OF THE CASE AND PROCEDURAL HISTORY

      On November 7, 2001, a grand jury in the Middle District of Alabama returned a three-count indictment charging the Petitioner in violation of the following:

    Count I.  Title 21 U.S.C. §§ 841(a)(1) and 846, conspiracy to distribute and possess with intent of distribute more that 1000 kilograms of marijuana, a Schedule I Controlled Substance.

    Count II.  Title 21 U.S.C. §§ 841(a)(1) and 846, knowingly and intentionally attempting to possess with intent to distribute approximately 124 pounds of marijuana, a Schedule I Controlled Substance.

1

Count III.  Title 21 U.S.C. § 853, forfeiture allegation.

On April 15, 2002, jury selection began and a jury trial commenced in the above-referenced cause.

On April 18, 2002, an oral order was entered granting in part and denying in part a Motion for Declaration of a Mistrial. The Petitioner was subsequently placed on home confinement with ankle bracelet monitoring.

On April 29, 2002, the Petitioner, by and through counsel, filed a Notice of Intent to Appeal, stating a claim that the Trial Court erred by declaring a mistrial without making a finding of bad faith or prosecutorial misconduct in this case.

On February 18, 2003, an order issued in lieu of the mandate of the United States Court of Appeals for the Eleventh Circuit whereby said appeal was dismissed for lack of jurisdiction.

On March 21, 2003, an order was entered granting a motion for the removal of the ankle bracelet monitor.

On July 6, 2004, an order to continue - ends of justice - was entered and, as a result, a second jury was scheduled to commence on September 13, 2004.

On October 18, 2004, a plea hearing occurred during which a Plea Agreement was entered thereby adjudging the Petitioner guilty to Count I of the indictment.

Prior to sentencing, a Pre-Sentencing Investigation Report (P.S.R.) was prepared in the above-styled case by and through the Adult Probation Office for the Middle District of Alabama.  The P.S.R. determined an amount of marijuana pursuant to §2D1.1(c) of the United States Sentencing Guidelines (U.S.S.G.) which constitutes

a Base Offense Level of <u>32</u> for an amount of more than 1000 kilo-
grams, but less that 3000 kilograms of marijuana.

This ascertainment of the quantity of marijuana was
charged in the indictment and acknowledged in the terms and condi-
tions of the Plea Agreement.

In addition, the P.S.R. determined additional enhancing
factors pursuant to the U.S.S.G., to wit:

I.  U.S.S.G. §2D1.1(b)(1), Specific Offense Characteristics.
If a dangerous weapon (including a firearm) was possessed, increase
by <u>2</u> levels.

II.  U.S.S.G. §3B1.1(a), Role In The Offense.
If the defendant was an organizer or leader of a criminal activity
that involved five or more participants, or was otherwise extensive,
increase by <u>4</u> levels.

The P.S.R. also determined that a <u>3</u> - level reduction
pursuant to §3E1.1(a) and (b) would be appropriate in this case.

On June 28, 2005, a motion for downward departure was
entered by the United States Attorney.  See docket entry #415.

On July 13, 2005, a sentencing hearing was conducted in
conjunction with the Petitioner's objections to the P.S.R. and the
above-mentioned downward departure and, as a result, sentence was
imposed.

The Petitioner was committed to the United States Bureau
of Prisons for execution of a term of imprisonment of <u>240</u> months
for Count I, with the remaining Counts of the indictment being
dismissed.

Notwithstanding the quantity of marijuana charged in the

3

indictment and acknowledged in the Plea Agreement, the sentence imposed in this case was based on facts not found by a jury nor admitted by the Petitioner.  The sentencing judge, by a preponderance of evidence standard, adopted the additional findings in the P.S.R. and applied them in excess of what was charged and acknowledged by the Petitioner.

The sentencing judge, by a preponderance of evidence standard, adopted findings in the P.S.R. and applied a 2 - level increase, pursuant to §2D1.1(b)(1) of the U.S.S.G.

The sentencing judge, by a preponderance of evidence standard, adopted findings in the P.S.R. and applied a 4 - level increase pursuant to §3B1.1(a) of the U.S.S.G.

The enhancments received by the Petitioner were neither charged in the indictment, nor submitted to a jury, neither presented by the Government during the change of plea hearing, nor confessed to by the Petitioner.  Based on the facts presented by the Government at the change of plea hearing, the Petitioner confessed to 1000 kilograms, but less that 3000 kilograms, of marijuana.  This, in effect, constitutes a Base Offense Level of 32, a Criminal History Category II, which indicates a Guideline range of 135-168 months, as opposed to the 240 months the Petitioner is currently serving.

By sentencing the Petitioner based on additional sentencing factors set forth in the P.S.R., the sentence heretofore imposed violated the Petitioner's Fifth Amendment right to due process and Sixth Amendment trial by jury guarantee as delineated in the Supreme Court decision in United States v. Booker and United States v. Fanfan, 543 U.S. 220 (2005).

4

This error constitutes a structural error which is not amenable to substantial rights analysis. This enhancement of the Petitioner's sentence in violation of the Fifth and Sixth Amendment restrictions constitutes a fundamental defect in the proceeding and a complete miscarriage of justice warranting that the Petitioner's sentence be set aside for resentencing.

The <u>Booker</u> and <u>Fanfan</u> decision is sufficiently under the scope of then-existing jurisprudence at the time of Petitioner's conviction and sentencing to be considered dictated by precedent and, therefore, can be applied retroactively as set forth infra.

## II.  SUPREME COURT DECISION

### IN BOOKER AND FANFAN

On January 12, 2005, the United States Supreme Court handed down the long-awaited decision in United States v. Booker and United States v. Fanfan, 543 U.S.____ (2005).  The Court held that the Sixth Amendment as constituted in Blakely v. Washington, 542 U.S. 296 (2004) applies to the Federal Sentencing Guidelines.  543 U.S.____ (slip op. at 5-20).  In addressing Washington State's Sentencing Guideline, the Blakely Court found that Jones v. United States, 526 U.S. 227 (1999); Apprendi v. New Jersey, 530 U.S. 466 (2000); and Ring v. Arizona, 536 U.S. 584 (2002) made clear "that the statutory maximum sentence that a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant" 543 U.S. at____(slip op. at 19-20) may not be exceeded.  The Booker Court also invalidated 18 U.S.C. §3553(b)(1) which directs that a court "shall impose sentence of the kind, and within the range" established by the Federal Sentencing Guidelines, subject to departures in specific, limited cases which direct the court to find an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the sentencing commission.  So modified, the Court made the Guidelines advisory as opposed to mandatory.  543 U.S. at____ (slip op. 13-20, second slip op. 2-17).

Booker was charged with Intent To Distribute at least 50 grams of cocaine base (crack).  Having heard evidence that he had 92.5 grams in his duffel bag, the jury found him guilty of a violation of 21 U.S.C. §841(a)(1).  That statute prescribes a minimum sentence

of 10 years. §841(b)(1)(A)(iii). Based on Booker's criminal history and the quantity of drugs found by the jury, the Sentencing Guidelines required the District Court Judge to select a "base level" sentence of not less than 210 nor more than 262 months in prison. See United States Sentencing Commission Guidelines Manual (U.S.S.G) §2D1.1(c)(4), §4A1.1 (November, 2003). The judge, however, held a post-trial sentencing proceeding and concluded by a preponderance of the evidence that Booker had possessed an additional 566 grams of crack and that he was guilty of obstructing justice. Those findings mandated that the judge select a sentence between 360 months and life imprisonment. The judge imposed a sentence at the low end of the range. Thus, instead of the sentence of 21 years and 10 months that the judge could have imposed on the basis of the facts proved to the jury beyond a reasonable doubt, Booker received a 30-year sentence. On appeal, the Court of Appeal for the Seventh Circuit held that this application of the Sentencing Guidelines conflicted with the Supreme Court holding in Apprendi and Blakely. The Appellate Court held that the sentence violated the Sixth Amendment, and remanded with instructions to the District Court either to sentence Booker within the sentencing range supported by the jury's finding or to hold a separate sentencing hearing before a jury. 543 U.S. at____ (slip op. at 2-3). On certiorari, the Supreme Court affirmed the Court of Appeal decision that the Booker sentence violated the Blakely holding because the District Court Judge enhanced Booker's sentence based on the additional 566 grams of crack cocaine that were not found by the jury beyond a reasonable doubt, in violation of the Sixth Amendment. The Supreme

7

Court also reversed the Court of Appeals decision requiring the District Court to conduct a separate sentencing hearing before a jury. The Supreme Court remanded the case for re-sentencing based on the facts found by the jury beyond a reasonable doubt. 543 U.S. at____ (slip op. at 5-12).

Fanfan was charged with a conspiracy to distribute at least 500 grams of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(B)(II). He was convicted by the jury after it answered "yes" to the question "was the amount of cocaine 500 or more grams?" Under the Guidelines, without additional findings of fact, the maximum sentence authorized by the jury verdict was imprisonment for 78 months. The trial judge conducted a sentencing hearing at which he found additional facts that, under the Guidelines, would have authorized a sentence in the 188 to 235 month range. Specifically, the trial judge concluded that Fanfan was responsible for 2.5 kilograms of cocaine powder and 261.6 grams of crack. The trial judge also concluded that Fanfan had been an organizer, leader, manager or supervisor in the criminal activity. Both findings were made by a preponderance of the evidence. Under the Guidelines, these additional findings would have required an enhanced sentence of 15 or 16 years, instead of the 5 or 6 years authorized by the jury verdict alone. Relying not only on the majority opinion in Blakely, but also on the categorical statements in the dissenting opinions and in the Solicitor General's brief in Blakely, the judge concluded that he could not follow the particular provisions of the Sentencing Guidelines "which involve drug quantity and role enhancement." Expressly refusing to make "any blanket decision absent that

8

federal guidelines", the judge followed the provisions of the
Guidelines that did not implicate the Sixth Amendment by imposing
a sentence on Fanfan "based solely upon the guilty verdict in the
case".  543 U.S. at____ (slip op. at 3-4).  The Supreme Court
vacated the judgment of the District Court, finding that the
District Court did not follow the mandate of Blakely, and remanded
the case for re-sentencing.  543 U.S. at____ (slip op. at 5-12).

III.   THE SUPREME COURT'S DECISION IN <u>BOOKER</u>
AND <u>FANFAN</u> APPLIES TO THE PETITIONER'S CASE

The Petitioner contends that the Supreme Court's decision
in <u>Booker</u> and <u>Fanfan</u> applies to his case.  This is because at the
change of plea hearing on October 18, 2004, during the factual basis
the Government unequivocally stated that its case against the Peti-
tioner was premised upon Count One, conspiracy to distribute, possess
with intent to distribute, more than 1000 kilograms but less than
3000 kilograms of marijuana.  This in effect would constitute a
Base Offense Level of <u>32</u>, with a Criminal History Category II, and
would result in a Guideline range of 135-168 months pursuant to the
general verdict in this case.

However, during the Petitioner's sentencing hearing on
July 13, 2005, the sentencing judge conducted a hearing and concluded
by a preponderance of the evidence that the Petitioner would be
attributed additional offense levels pursuant to the U.S.S.G.
§2D1.1(b)(1) and §3B1.1(a).  These additional enhancing factors
were not charged in the indictment, were not presented by the
Government at the change of plea hearing, and were not confessed
nor admitted to by the Petitioner at any time.

Therefore, by sentencing the Petitioner based on extra-
verdict enhancements, the Petitioner's sentence violated his Fifth
and Sixth Amendment protections as delineated in <u>Booker</u> and <u>Fanfan</u>,
<u>Blakely</u>, <u>Ring</u>, <u>Apprendi</u>, <u>In re Winship</u>, <u>Gaudin</u> and <u>Jones</u>.  The
foregoing error constitutes structural error, which is not amenable
to substantial rights analysis.  The above-mentioned extra-verdict
enhancements constitute a fundamental defect and a complete mis-
carriage of justice, warranting a resentencing of Petitioner.

10

IV.   THE SUPREME COURT'S DECISION IN BOOKER AND FANFAN
      APPLIES ON COLLATERAL REVIEW BECAUSE IT WAS DICTATED
 BY THE FIFTH AND SIXTH AMENDMENTS OF THE UNITED STATES CONSTITUTION
 AND, THEREFORE, DOES NOT CONSTITUTE A NEW RULE FOR PURPOSES OF THE
         TEAGUE v. LANE NON-RETROACTIVITY DOCTRINE

     The Petitioner contends that the Supreme Court's decision in
Booker and Fanfan applies on collateral review because it was
dictated by the existing precedents of the Fifth and Sixth
Amendments that were pre-existing at the time Petitioner's
conviction and sentence became final. The Booker and Fanfan
decision can be retroactively applied in habeas corpus proceedings.

     The Petitioner further contends that because the Booker
decision was dictated by the Fifth and Sixth Amendments, as
explained in In re Winship, 397 U.S. 358, 364 (1970); United
States v. Gaudin, 515 U.S. 506, 511 (1995); Jones v. United States,
526 U.S. 227, 230 (1999); Apprendi v. New Jersey, 530 U.S. 466
(2000); Ring v. Arizona, 536 U.S. 574 (2002); Blakely v. Washington,
542 U.S. 296 (2004);, therefore, it does not constitute a new
constitutional law or new "watershed rule" of criminal procedure
for purposes of the Teague non-retroactivity analysis. See
Perry v. Lynagh, 492 U.S. 302, 316-317 (1989); Stringer v. Black,
503 U.S. 222 (1992); United States v. Johnson, 457 U.S. 537, 549
(1982); Truesdale v. Aiken, 480 U.S. 527 (1987). As a general
matter, Federal Courts may not apply a new Supreme Court decision
on collateral proceedings if to do so would create a new rule of
constitutional law, subject to two narrow exceptions in Teague v.
Lane, 489 U.S. 288 (1989). A case decided after a habeas corpus

                              11

petitioner's conviction and sentence becomes final may not be the predicate for habeas relief unless the petitioner meets either of the two narrow exceptions of <u>Teague</u>. <u>See</u> 489 U.S. at 311.[1] There is another exception, however, where the new Supreme Court's decision was dictated by constitutional procedural principles which were pre-existing at the time that the petitioner's conviction and sentence became final. <u>Penry v. Lynaugh</u>, 492 U.S. 302, 316-317 (1989) (recognizing that the application of established general constitutional procedural principles in an analogous context is not a new rule barred by <u>Teague</u>); <u>Stringer v. Black</u>, 503 U.S. 222 (1992) (no new rule established where prior case's rule "emerges not from any single case...but from our long line of authority" on matter and, despite differences in the petitioner's case, the result petitioner seeks "follows a fortiori from the earlier case").

When applying <u>Teague</u> to determine whether a habeas corpus petitioner is eligible to habeas relief, the courts follow three steps: (1) the courts determine when petitioner's conviction and sentence became final, (2) the courts "survey the legal landscape as it then existed to determine whether a [] court considering petitioner's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the constitution", and (3) if petitioner seeks the benefit of a new rule, the courts must decide

---

[1]    Under <u>Teague</u>, a <u>new rule</u> should be applied retroactively if 1) it places "certain kinds of primary, private individuals' conduct beyond the power of the criminal law-making authority to proscribe," or 2) it is a "watershed rule [] of criminal procedure," implicating the fundamental fairness and accuracy of the criminal proceeding. <u>Teague v. Lane</u>, 489 U.S. at 311.

whether the rule falls within one of the narrow exceptions to the non-retroactivity principles. Caspari v. Bohlen, 510 U.S. 383, 390 (1994).

46.    In the instant case, the record indicates that the Petitioner's sentence and conviction became final on July 23, 2006. See Teague v. Lane, 489 U.S. 288, 295 (1989) (holding that a case is "final" when the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed).  The District Court in 2005 would have felt compelled by the Supreme Court precedent in Jones, In re Winship, Apprendi, Ring, Gaudin, to conclude that the Sixth Amendment required that the maximum sentence a judge may impose should be based solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.  Booker and Fanfan application of Fifth and Sixth Amendment principles firmly established prior to 2005 compel that the Petitioner in this case be sentenced solely based on the facts reflected in the general verdict on October 18, 2004. The Petitioner contends that the rule set forth in Booker and Fanfan, which he now seeks to benefit from, is not new and, hence, not barred by Teague.

47.    In Teague, a plurality of the Supreme Court espoused Justice Harlan's view of retroactivity that a new rule of law would not be applied on collateral review to cases that became final prior to the announcment of the new rule.  In Teague, the Court has clarified that this principle of non-retroactivity serves to ensure that gradual developments in the law, over which

13

reasonable jurists may disagree, are not later used to upset the finality of convictions valid when entered. <u>Sawyer v. Smith</u>, 497 U.S. 227 (1990). Moreover, the rule reflects the limited purpose of federal habeas corpus, "to ensure that [·] convictions comply with the federal law in existence at the time the conviction became final, and not provide a mechanism for the continuing reexamination of final judgments based upon later emerging legal doctrine." <u>Id</u>.

Applying the non-retroactivity principle in a way that balances the need for finality of convictions against the need to enforce minimal constitutional protections has proven challenging. Even in <u>Teague</u>, the Court acknowledged that the task of determining whether a case announces a new rule is often difficult. For that reason, the <u>Teague</u> court expressly did not "attempt to define the spectrum of what may or may not constitute a new rule" for purposes of retroactivity. <u>Teague</u>, 489 U.S. at 301; <u>See also Mackey v. United States</u>, 401 U.S. 667, 695 (1971) (Harlan, J., concurring in judgments and dissenting in part) (recognizing "the inevitable difficulties that will arise in attempting to determine whether a particular decision has really announced a 'new' rule at all or whether it has simply applied a well-established constitutional principle to govern a case which is closely analogous to those which have been previously considered in the prior case law"). The <u>Teague</u> court, however, offers the following general guidelines:

> "[A] case announces a new rule when it breaks new ground
> or imposes a heretofore new obligation on the states or
> the Federal Government. To put it differently, a case
> announces a new rule if the result was not dictated by
> precedent existing at the time the petitioner's conviction
> became final." <u>Id</u>. (emphasis in original).

A majority of the court employed these guidelines shortly after
Teague in Penry v. Lynaugh, 492 U.S. 302, 316 (1989). In Penry,
the majority of the court adopted Teague's non-retroactivity
doctrine. See id. Thus, the analysis in Penry is instructive
with respect to the distinction between a new rule under Teague
and an application of established principles to a case that is
analogous to prior precedent.

Penry claimed that his Eighth Amendment rights were
violated because the jury in his capital murder trial was unable
to fully consider and give effect to mitigating evidence of his
mental retardation and childhood abuse when answering Texas' three
statutory special issues at sentencing. Penry did not facially
challenge the Texas death penalty statute. Instead, Penry claimed
that, "on the facts of [his] case, the jury was unable to fully
consider and give effect to the mitigating evidence...in answering
the three special issues." 492 U.S. at 315 (emphasis added). The
state argued that Penry's asserted rule amounted to an extension
of established principles and consequently was barred by Teague.
The court was thus faced with determining whether the rule asserted
by Penry was an application of established principle or a new rule
of law.

Prior to 1986, when Penry's conviction and sentence
became final, the Supreme Court had established that "in capital
cases the fundamental respect for humanity underlying the Eighth
Amendment requires consideration of the character and record of
the individual offender and the circumstances of the particular

15

offense, as a constitutionally indispensable part of the process of inflicting the penalty of death." See Penry, 492 U.S. 302, 317 (1989). The Court had stressed this fundamental principle in upholding Texas' capital punishment statute against a facial Eighth Amendment challenge in Jurek v. Texas, 428 U.S. 262 (1976). In Jurek, the court concluded that Texas' sentencing scheme satisfied the Eighth Amendment provided that sentencing juries were allowed to consider any mitigating circumstances relevant to a specific case. Jurek, 428 U.S. at 272. Supreme Court decisions subsequent to Jurek and Woodson, but prior to Penry's conviction becoming final, reaffirmed the need for an individualized assessment of the appropriateness of the death penalty under the Eighth Amendment. See Lockett v. Ohio, 438 U.S. 586 (1978); Eddings v. Oklahoma, 455 U.S. 104 (1982) (both concluding that a sentencer cannot be precluded from considering and giving affect to relevant mitigating circumstances when determining the appropriateness of the death penalty in a particular case). At the same time, however, no Supreme Court decisions prior to Penry had commanded courts to instruct juries how to consider specific mitigating evidence in a particular case. Instead, the case law established fundamental Eighth Amendment principles for application in analogous cases.

The Supreme Court concluded that despite the absence of a specific holding requiring the instruction sought by Penry, the rule Penry sought to benefit from was dictated by the Eighth Amendment principles espoused and enforced in the Court's prior

16

cases. According to the Court, it was firmly established at the time of Penry's conviction that a sentencer in Texas had to consider any mitigating evidence specific to the circumstances of Penry and his crime. Penry, 492 U.S. at 317. The rule that Penry sought - a requirement that the jury be instructed specifically what mitigating evidence it should consider and how it should consider that evidence when answering Texas' special issues - was not "new" for the purposes of Teague because it represented a specific application of general Eighth Amendment principles outlined in prior analogous cases. Though Penry's claim for relief did not require the state to issue specific instructions that it had not previously issued, the rule which controlled Penry's case was nevertheless not new. Moreover, the rule did not impose a new obligation on Texas, it simply required that Texas fulfill its obligation, expressed in Jurek, to ensure "that the special issues [of the Texas capital punishment statute] would be interpreted broadly enough to permit the sentencer to consider all of the relevant mitigating evidence a defendant might present in imposing sentence." Id. See also Bousley v. United States, 523 U.S. 614, 620 (1998) (rejecting the argument that the petitioner's claim that his guilty plea was not knowing and intelligent was barred by Teague in part because "there is surely nothing new about this principle"; Wright v. West, 505 U.S. 277, 304 (1992) (O'Connor, J., concurring) ("if a proferred factual distinction between the case under consideration and pre-existing precedent's underlying principles apply, the distinction is not meaningful, and any deviation from precedent is not reasonable").

17

Just as <u>Penry</u> sought an application of Eighth Amendment principles well-established at the time that his conviction became final, the Petitioner now seeks the application of Sixth Amendment principles that were well-established at the time that his conviction became final. Just as <u>Teague</u> did not prevent <u>Penry</u> from receiving the benefit of established Eighth Amendment protections, it should not prevent the Petitioner from receiving the benefit of established Sixth Amendment protections.

In the instant case, at the time that the Petitioner's conviction became final in 2006, it was well-established in the legal landscape that defendants have the Sixth Amendment right to have a judge impose sentence solely based on the facts reflected in the jury verdict or admitted by the defendant. In <u>Booker</u> and <u>Fanfan</u> decisions, the Supreme Court clearly indicated that it was not announcing a new rule, but reaffirming the principles delineated in <u>Jones</u>, <u>Apprendi</u>, <u>Ring</u>, <u>Blakely</u>, <u>In re Winship</u> and <u>Gaudin</u>.

> It has been settled throughout our history that the Constitution protects every criminal defendant against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged. <u>In re Winship</u>, 397 U.S. 358, 364 (1970). It is equally clear that the "Constitution gives a criminal defendant the right to demand that a jury find him guilty of all elements of the crime with which he is charged". <u>United States v. Gaudin</u>, 515 U.S. 506, 511 (1995). These basic precepts, firmly rooted in the common law, have provided the basis for recent decisions interpreting modern criminal statutes and sentencing procedure.
> In <u>Jones v. United States</u>, 526 U.S. 227, 230 (1999), we considered the federal carjacking statute, which provides three different maximum sentences depending on the extent of harm to the victim, 15 years in jail if there was no serious injury to a victim, 25 years if there was "serious bodily injury", and life in prison if death resulted. 18 U.S.C. § 2119 (1988 ed., Supp. V).

In spite of the fact that the statute "at first glance
has a look to it suggesting [that the provisions relating
to the extent of harm to the victim] are only sentencing
provisions," 526 U.S. at 232, we concluded that the
harm to the victim was an element of the crime.  That
conclusion was supported by the statutory text and
structure, and was influenced by our desire to avoid
the constitutional issues implicated by a contrary
holding, which would have reduced the jury's role "to
the relative importance of low-level gate-keeping."
Id., at 244.  Foreshadowing the result we reach today,
we noted that our holding was consistent with a "rule
requiring jury determination of facts that raise a
sentencing ceiling" in state and federal sentencing
guideline systems. Id., at 251, n.11.

In Apprendi v. New Jersey, 530 U.S. 466 (2000),
the defendant pleaded guilty to second degree possession
of a firearm for an unlawful purpose, which carried
a prison term of 5-to-10 years.  Thereafter, the
trial court found that his conduct had violated
New Jersey's "hate crime" law because it was racially
motivated, and imposed a 12-year sentence.  This court
set aside the enhanced sentence.  We held: "other than
the fact of a prior conviction, any fact that increases
the penalty for a crime beyond the prescribed statutory
maximum must be submitted to a jury, proved beyond a
reasonable doubt." Id., at 490.  As a matter of simple
justice, it seemed obvious that the procedural safe-
guards designed to protect Apprendi from punishment
for the possession of a firearm should apply equally
to his violation of the hate crime statute.  Merely
using the label "sentence enhancement" to describe the
latter did not provide a principled basis for treating
the two crimes differently. Id., at 476.

In Ring v. Arizona, 536 U.S. 574 (2002), we reaffirmed
our conclusion that the characterization of critical
facts is constitutionally irrelevant.  There, we hold
that it was impermissible for "the trial judge, sitting
alone" to determine the presence or absence of the
aggravating factors required by Arizona law for
imposition of the death penalty. Id., at 588-589. "If
a state makes an increase inthe defendant's authorized
punishment contingent on the finding of a fact, that
fact --- no matter how the state lables it --- must be
found by a jury beyond a reasonable doubt."  Id., at
602.  Our opinion made it clear that ultimately, while
the procedural error in Ring's case might have been
harmless because the necessary finding was implicit
in the jury's guilty verdict, Id., at 609, n.7, "The
characterization of a fact or circumstances as an
'element' or a 'sentencing factor' is not determination
of the question 'who decides', judge or jury." Id.,
at 605.

In <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), we
dealt with a determinate sentencing scheme similar to
the Federal Sentencing Guidelines. There the defendant
pleaded guilty to kidnapping, a Class B felony punishable
by a term of not more than 10 years. Other provisions
of Washington law, comparable to the Federal Sentencing
Guidelines, mandated a "standard" sentence of 49-to-53
months, unless the judge found aggravating facts justifying
an exceptional sentence. Although the prosecutor
recommended a sentence in the standard range, the judge
found that the defendant had acted with "deliberate cruelty"
and sentenced him to 90 months. <u>Id.</u>, at ___ (slip op., at 3).
    For reasons explained in <u>Jones</u>, <u>Apprendi</u>, and <u>Ring</u>,
the requirements of the Sixth Amendment were clear.
The application of Washington's sentencing scheme
violated the defendant's right to have the jury find
the existence of "any particular fact" that the law
makes essential to his punishment. 542 U.S. ___
(slip op., at 5). That right is implicated whenever
a judge seeks to impose a sentence that is not solely
based on "facts reflected in the jury verdict or admitted
by the defendant." <u>Id.</u>, at___ (slip op., at 7)(emphasis
deleted). We reject the state's argument that the jury
verdict was sufficient to authorize a sentence within
the general 10-year sentence for Class B felonies,
noting that under Washington law, the judge was <u>required</u>
to find additional facts in order to impose the greater
90-month sentence. Our precedents, we explained, make
clear "that the 'statutory maximums' for <u>Apprendi</u>
purposes is the maximum sentence a judge may impose
<u>solely on the basis of the facts reflected in the
jury verdict or admitted by the defendant.</u>" <u>Ibid.</u>
(slip op., at 7)(emphasis in original). The
determination that the defendant acted with deliberate
cruelty, like the determination in <u>Apprendi</u> that the
defendant acted with racial malice, increased the
sentence that the defendant could have otherwise
received. Since this fact was found by a judge
using a preponderance of the evidence standard,
the sentence violated <u>Blakely</u>'s Sixth Amendment rights.

<u>Booker</u> and <u>Fanfan</u>, 543 U.S. at ____ (slip op., at 5-9). Based

on the foregoing, the Supreme Court's decision in <u>Booker</u> and

<u>Fanfan</u> can be applied to the Petitioner's case without violating

the principle of <u>Teague</u> based on the Supreme Court's teaching

in <u>Penry</u>. Id., See also <u>Stringer</u>, 503 U.S. at 230-231 (giving

retroactive effect to the Court's decision in <u>Clemons v.</u>
<u>Mississippi</u>, 494 U.S. 738, 741 (1990), despite the fact
that severed the pre-<u>Clemons</u> lower court opinions held
contrary to <u>Clemons</u>).[2]

---

[2]

   The purpose of collateral relief under §2255 is identical to that of
the habeas writ generally.  <u>See</u> <u>Davis v. United States</u>, 417 U.S. 333, 343
(1974).

V.  THE SUPREME COURT'S BOOKER AND FANFAN DECISION IS
APPLICABLE TO THE PETITIONER'S CASE AS A CHANGE
IN SUBSTANTIVE LAW BECAUSE THE SUPREME COURT
CLARIFIED OR INTERPRETED 18 U.S.C. § 3553(b)
AND § 3742(e) IN A MORE NARROW READING THAN
HAD PREVIOUSLY BEEN APPLIED AT THE TIME OF
THE PETITIONER'S CONVICTION AND SENTENCE

The Petitioner contends that the Supreme Court's Booker
and Fanfan decision is applicable to his case as a change in
substantive law because the Supreme Court clarified the whole
Federal Sentencing Scheme by invalidating 18 U.S.C. §§ 3553(b)
and 3742(e), and interpreting their meaning in a more narrow
reading than had previously been applied at the time of the
Petitioner's conviction and sentence.  543 U.S. at____ (slip op.,
at 9-12, second slip op., at 2-17).

While all of the foregoing analysis and cases clearly
support the Petitioner's contention that the Court should apply
the Booker and Fanfan decision retroactively to the Petitioner's
case as it does not constitute a new rule,  authority also exists
to support the application of Booker and Fanfan in the Petitioner's
case as a "change in substantive law", exempt from Teague's non-
retroactivity doctrine.  This is because in arriving at its
holding in Booker and Fanfan, the Supreme Court had to read
18 U.S.C. § 3742(e) and § 3553(b) more narrowly than had
previously been applied at the time of Petitioner's conviction
and sentence.  543 U.S. at____ (slip op., at 9-12, second op.
at 2-17).  The Supreme Court's analysis in this decision was

22

similar to the Court's analysis in Bousley, 523 U.S. at 619-621, (new clarification or interpretations of criminal statutes made after a defendant's conviction under that statutue are retroactive on collateral review).[3] See also Schriro v. Summerlin, 124 S.Ct. 2519, 2522 (2004) ("New substantive rule generally applies retroactively [on collateral review]. This includes decisions that narrow the scope of a criminal statute by interpreting its terms") The rationale behind such a policy begins with the idea that "a statute, under our system of separate powers of government, can have only one meaning." Brough v. United States, 454 F.2d 370, 370-73 (7th Cir. 1971)(emphasis added); accord Bousley 523 U.S. at 620-21 ("[U]nder our federal system it is only Congress, and not the Courts, which makes conduct criminal.")

In finality, the Petitioner contends that the Supreme Court's decision in Booker and Fanfan applies on collateral review

---

[3]
  Lanier v. United States, 220 F.3d 833, 838 (7th Cir. 2000)(noting defendant was entitled, even on collateral review, to the benefit of court's interpretation of a term in 21 U.S.C. § 848 made after defendant's conviction had become final); United States v. Ryan, 227 F.3d 1058, 1062-63 (8th Cir. 2000)(determining that when the Supreme Court narrows the interpretation of a criminal statute enacted by Congress, that the interpretation may be applied retroactively to § 2255 claims for post-conviction relief); United States v. Barnhardt, 93 F.3d 706, 708 (10th Cir. 1996)(Supreme Court decision defining substantive reach of criminal statute can be applied retroactively to cases on collateral review); Robinson v. United States, 196 F.3d 748, 752 (7th Cir. 1999)("in Bousley [], the Supreme Court made clear that Teague's retroactivity bar applies only to new rules of criminal procedure, not to changes in substantive law"); United States v. Talk, 158 F.2d 1064, 1070 (10th Cir. 1998), cert. denied, 525 U.S. 1164 (1999)(relying on Bousley in concluding that "Teague plainly applies only to rules that are both new and constitutional" and therefore deeming Teague inapplicable to claim based based on recent Supreme Court ruling on statutory standard for appellate review of Sentencing Guidelines downward departure, given that rule is "not constitutional and also is not new" because it merely clarified what statute has always required).

because it clarified the Federal Sentencing Act, and, therefore, is not barred by the Teague non-retroactivity doctrine. See, Bousley v. United States, 523 U.S. 614, 620 (1998); United States v. Jackson, 390 U.S. 570 (1968); Natale v. United States, 424 F.2d 725, 727 (9th Cir. 1970); Rivers v. Roadway Express, 511 U.S. 298, 313 (1994); United States v. Stinson, 30 F.3d 121, 122 (11th Cir. 1994); United States v. Garcia Cruz, 40 F.3d 986, 988 (9th Cir. 1994); Oliver v. United States, 90 F.3d 177, 179 (6th Cir. 1996); United States v, Talk, 158 F.3d 1064, 1071 (10th Cir. 1998); cert. denied, 525 U.S. 1164 (1999).

In other words, when a Court interprets the scope of an existing criminal statute, that interpretation effectively serves as a declaration of what the statute has always meant. Gates v. United States, 515 F.2d 73, 78 (7th Cir. 1975).

Based on the foregoing, the Petitioner submits that this Court can properly and should retroactively apply Booker and Fanfan in the Petitioner's case as argued supra.

It is clear that a district court can make retroactive decisions. see Dodd v. United States, 365 F.3d 1273, 1278 (11th Cir. 2004); Brown v. Uphoff, 381 F.3d 1219, 1225 (10th Cir. 2004); Ashley v. United States, 226 F.3d 671, 673 (7th Cir. 2001); Pryor v. United States, 278 F.3d 612, 615-16 (6th Cir. 2002); Weigand v. United States, 380 F.3d 890, 892 (6th Cir. 2004); United States v. Swinton, 333 F.3d 481, 486 (3rd Cir. 2003).

## VI.  INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner respectfully submits that his counsel was ineffective.  Meaningful assistance of counsel is guaranteed by the United States Constitution, Strickland v. Washington, 466 U.S. 668 (1984).

Generally, an ineffective claim is assessed by an objective deficiency on the part of defense counsel, and also proof that the deficiency prejudiced the defendant to the point of throwing doubt on the outcome.  See, e.g., Strickland, supra at 687; Murray v. Carrier, 477 U.S. 478, 495-96 (1986); Billy-Ecko v. United States, 8 F.3d 111 (2nd Cir. 1993).

The companion case to Strickland, United States v. Cronic, 466 U.S. 648, was identified in Strickland as an alternative to the general rule, stating that his ineffective assistance of counsel claim rises to the level of denial of counsel as expressed in Strickland, supra, "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding.  This right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the prosecution to which they are entitled... an accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure the trial is fair." Id (emphasis added).

The Petitioner asserts that this "adversarial

25

hearing" is mandated by the Constitution and laws of the United States on every element of the crime charged.

The right to effective assistance of counsel is the right of the accused to require the prosecution's case to survive the crucible of meaning adversarial testing. When a true adversarial criminal trial has been conducted, even if defense counsel may have made demonstrable errors... the kind of testing envisioned by the Sixth Amendment has occured. But if the process looses its character as a confrontation between adversaries, the Constitutional guarantee is violated. Id., Cronic (1984).

The Petitioner submits to this Court that his counsel was ineffective in his representation of the Petitioner during the sentencing phase. In support thereof, the Petitioner provides the following, infra.

## VII.    PETITIONER'S COUNSEL RENDERED
## INEFFECTIVE ASSISTANCE IN THIS CASE

The Petitioner contends that the alleged acts and omissions of his counsel of record, John Parkman III, constitute ineffective assistance of counsel.

The alleged deficiencies of counsel stem from "acts and omissions" that constitute prejudicial ramifications in violation of the Petitioner's Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

On October 18, 2004, the Petitioner, by and through counsel, entered a plea of guilty to Count One of the indictment. The indictment charged the Petitioner with distribution and possession with intent to distribute more than 1000 kilograms of marijuana, a Schedule I Controlled Substance, in violation of Title 21 U.S.C. §§ 841(a)(1) and 846.

The Factual Basis for the Plea Agreement in this case consists of the following:

> The defendant understands the nature of the charge to which the plea is offered involves proof as to Count One. Joseph Kennedy, defendant herein, did knowingly and intentionally conspire, combine and agree together and with other persons known and unknown to the Grand Jury, to distribute and possess with intent to distribute more than 1000 kilograms of marijuana, a Schedule I Controlled Substance, in violation of Title 21 United States Code Section 841(a)(1). All in violation of Title 21 United States Code Section 846.

This in effect constitutes a Base Offense Level of 32, with a Criminal History Category II, which results in a Guideline range of 135-168 months as a consequence of the general verdict in this case.

On July 13, 2005, a sentencing hearing was conducted in

conjunction with the Petitioner's objections to the P.S.R. and further in conjunction with the downward departure motion entered by the United States of America.

As a result the Sentencing Judge granted the motion for downward departure entered orally by the United States of America [docket entry #415], and further determined that U.S.S.G. §2D1.1(b)(1) Specific Offense Characteristics, If a dangerous weapon (including a firearm) was possessed, increase by 2 levels, would <u>not</u> be attributed to the Petitioner in the case at bar as a result of successful objections and arguments set forth by John Parkman III, counsel of record for the Petitioner.

However, the Sentencing Judge also determined that the U.S.S.G. §3B1.1(a), If the defendant was an organizer, leader of a criminal activity that involved five or more participants, or was otherwise extensive, increase by 4 levels, would be attributed to the Petitioner as determined in the P.S.R.  Additionally, a 3-level reduction was awarded in this case pursuant to the U.S.S.G. §3E1.1 (a) and (b) as further being determined as appropriate in this case by and through the Adult Probation Department and set forth in the P.S.R.

Accordingly, sentence was imposed and the Petitioner received a term of imprisonment of 240 months, followed by a term of 5 years supervised release.  On July 26, 2005, said Judgment was entered at docket entry #425.

The Petitioner submits that his counsel's performance was ineffective despite the successful objections and arguments that negated the use of the U.S.S.G. §2D1.1(b)(1) and further, despite the 3-level reduction awarded pursuant to U.S.S.G. §3E1.1

28

(a) and (b) because he did not object when the Honorable Court imposed a Judgment that does not reflect the above-mentioned successfully argued rulings.

The Petitioner submits that his counsel rendered ineffective assistance during the sentencing phase in violation of the Petitioner's Fifth Amendment right to due process of law and Sixth and Fourteenth Amendment right to have effective counsel during the sentencing proceedings.  The Petitioner's counsel's alleged "acts or omissions" as set forth herein arise as a result of counsel being aware of his own successful objections and arguments in regards to U.S.S.G. §2D1.1(b)(1) and the 3-level reduction pursuant to U.S.S.G. §3E1.1(a) and (b) as set forth in the P.S.R. but when the District Court inadvertently entered a Judgment that obviously overlooked the successfully argued sentencing reduction and extra-verdict enhancement objections, counsel chose to remain silent as the Court imposed the 240 month term of imprisonment. The alleged "act or omission" of counsel allowed the District Court to inadvertently impose a sentence which was non-compliant with the successful objection to the enhancement and the ruling for the 3-level reduction for acceptance of responsibility.

The Petitioner was prejudiced from the alleged "acts or omissions" of his counsel because, absent the "acts or omissions", there is a reasonable probability that the outcome of the sentencing hearing would have been significantly different.  Counsel abandoned his client's best interests at a critical juncture.

The Petitioner herein challenges the U.S.S.G. §3B1.1(a) enhancement under premises that counsel should have raised during the sentencing hearing in light of United States v. Booker, supra.

29

The Petitioner contends that Booker was handed down by the Supreme Court prior to the imposition of sentence in this case and competent counsel would have raised a Booker-type Sixth Amendment challenge. The Petitioner's counsel's alleged "acts or omissions" related to the Booker ruling demonstrate counsel's incomplete investigation of recent developments in law and Supreme Court mandates. Counsel could have, but did not investigate and raise these issues providing adequate representation compliant with the Blakely dictates as set forth and applied to the Federal Sentencing Act in Booker. Instead, he ignored the Supreme Court mandate in Booker, which must apply to every case that has not yet become final without exception. During the sentencing hearing, due to counsel's "acts or omissions" the Petitioner was not afforded an opportunity to challenge the extra-verdict enhancements in light of the Blakely dictates which may have resulted in a significantly different outcome. The lack of an objection in the proceedings allowing a successful Sixth Amendment right to trial by jury guarantee challenge further deprives the Petitioner of due process of law. Absent these "acts and omissions" of counsel, there is a reasonable probability that the outcome at sentencing would have been a lesser sentence.

Furthermore, counsel's "acts or omissions" in regards to Booker create even deeper prejudicial ramifications. If counsel had raised this claim during the sentencing hearing, Booker and Blakely dictates would have applied without exception. Now, the Petitioner must face a retroactivity hurdle on collateral review resulting in a deprivation of judicial review before his conviction became final regarding the alleged Sixth Amendment violations as set forth herein by the Petitioner.

The Petitioner has set forth many causes resulting in prejudice suffered by the Petitioner. Furthermore, if not for the "acts or omissions" of his counsel identified herein, there is a reasonable probability of a significantly different outcome in the proceedings, resulting in a lesser sentence.

Therefore, the Petitioner contends that his counsel, John Parkman III, was ineffective, resulting in an objective deficiency on his part. The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment since access to counsel's skill and knowledge is necessary to accord defendants ample opportunity to meet the case of the prosecutor to which they are entitled.

In this case, this simply did not take place and, as a result, the Petitioner's Sixth Amendment right to effective counsel is violated.

VIII.    THE PETITIONER HEREIN MOVES THE
HONORABLE COURT PURSUANT TO RULE 36
OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

Rule 36. Clerical Error

After giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission.

The Petitioner submits to this Court that a clerical error exists in this Court's Judgment entered July 26, 2005, docket entry #425, whereby the Petitioner moves the Honorable Court to correct said Judgment pursuant to Rule 36 of the F.R.Crim.P.  In support thereof, the Petitioner provides the following:

On June 28, 2005, the United States of America entered a motion for downward departure pursuant to §5K1.1 of the U.S.S.G. See docket entry #415.

On July 13, 2005, during the sentencing hearing, an oral order was heard as to JOSEPH KENNEDY, the Petitioner, and said motion was granted for a downward departure pursuant to §5K1.1 of the U.S.S.G.

On July 13, 2005, during the sentencing hearing, the Petitioner, by and through counsel, successfully argued against the gun enhancement pursuant to §2D1.1(b)(1) whereby this Court determined that it would not be assessed toward the Petitioner's sentence.

On July 13, 2005, during the sentencing hearing, this Court adopted the finding in the P.S.R. whereby it was determined

32

that the Petitioner was eligible for a three-level reduction pursuant to §3E1.1(a) and (b) of the U.S.S.G. and this Court determined nothing to contradict this finding.

The Petitioner contends that the record and facts of this case support the Petitioner's claim in the case at bar.

The Petitioner submits that the Judgment entered on July 26, 2005, does not reflect the foregoing rulings and was entered inadvertently and incorrectly, causing grave prejudice.

Therefore, the Petitioner requests that this Court correct the Judgment Order in this case to reflect the above-referenced claims pursuant to Rule 36 of the F.R.Crim.P.

## C O N C L U S I O N

WHEREFORE, premises considered and pursuant to the foregoing subject matter set forth herein, the Petitioner requests this Court apply the equitable tolling doctrine to the statute of limitations in this case and enter an order to show cause or to conduct an evidentiary hearing to fully develop the record in support of this claim. Furthermore, find that the counsel of record for the Petitioner was ineffective in his representation pursuant to the claims and premises set forth by the Petitioner. Furthermore, find that clerical error exists warranting the appropriate correction in compliance with the record of this case, and finally, find that United States v. Booker applies on collateral review as being dictated by an existing precedent and additionally as a clarification resulting from the Supreme Court's interpretation of a Congress-enacted

33

statute in a more narrow reading than had previously been applied.

Respectfully submitted,

JOSEPH KENNEDY
REG. NO. 10956-002
FCC YAZOO CITY MEDIUM
POST OFFICE BOX 5888
YAZOO CITY, MS 39194